# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KANYE CLARY, | No. 4:25-CV-00445 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| PENNSYLVANIA STATE UNIVERSITY, MICHAEL RHOADES, HAPPY VALLEY UNITED, BLUEPRINT SPORTS AND ENTERTAINMENT, LLC, JOHN DOES 1-10, and ABC CORPORATIONS 1-10, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

### JUNE 10, 2025

**I.    BACKGROUND**

On December 20, 2024, Defendants The Pennsylvania State University ("Penn State") and Michael Rhoades ("Rhoades") removed this case from the Philadelphia County Court of Common Pleas to the United States District Court for the Eastern District of Pennsylvania.[1] The parties then filed several motions, including a motion to dismiss, a motion to remand, and a motion to transfer venue. The Honorable Chad F. Kenney treated Plaintiff Kanye Clary's request to voluntarily dismiss certain counts as a Motion to Amend the Complaint and

---

[1] Notice of Removal, Doc. 1.

subsequently granted that motion on March 7, 2025.[2] Penn State's and Rhoades's Motion to Transfer Venue was granted several days later on March 11, 2025.[3] But one aspect of the Motion to Dismiss filed by Penn State and Rhoades on January 17, 2025 remains unresolved: Defendants' attempt to dismiss Clary's defamation claim. For the reasons that follow, that portion of the motion is granted.

## II.   MOTION TO DISMISS STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[4] and *Ashcroft v. Iqbal*,[5] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of

---

[2]   Ord. Grant Motion to Amend, Doc. 20.
[3]   Ord. Granting Motion to Transfer Venue, Doc. 22.
[4]   550 U.S. 544 (2007).
[5]   556 U.S. 662 (2009).
[6]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

2

truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[7]

## III. DISCUSSION

### A. Facts Alleged in the Amended Complaint

#### 1. The Affidavit

Before the Court may recite the relevant facts, it is confronted with the issue posed by the affidavit submitted alongside Plaintiff's Brief in Opposition. In that affidavit, Clary described the purportedly defamatory statements in substantially more detail. But, when deciding a motion to dismiss, a court generally considers only the allegations in the complaint, exhibits attached thereto, and facts of public record.[8] Normally, to consider anything beyond those sources, a motion to dismiss must be converted to a motion for summary judgment.[9] But consideration of materials outside the complaint is not completely barred on a 12(b)(6) motion. Courts may consider any documents that are integral or explicitly relied upon in the complaint.[10] However, this affidavit is neither integral to the Amended Complaint nor explicitly relied upon in it. As such, the Court will not consider the information in the affidavit when deciding the present motion.

---

[7] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[8] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).
[9] *See* FED. R. CIV. P. 12(d).
[10] *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

### 2.     The Relevant Facts in the Amended Complaint

While a student at Penn State, Kanye Clary was the captain of the University's men's basketball team; during that time, Michael Rhoades served as the team's head coach.[11] As captain, Clary "voiced concerns about lax discipline for late arrivals, disrespect, and lack of accountability for certain players."[12] Rhoades dismissed these concerns, and the coaching staff began to treat Clary unfairly for raising these issues.[13]

Penn State also used Clary's Name, Image, and Likeness ("NIL") without his permission.[14] This prompted Clary's family to complain to Rhoades on January 16, 2024.[15] Rhoades then provided Plaintiff a copy of a proposed contract, but he "refused to sign the contract."[16] Upon this refusal, "the retaliation against him escalated."[17] Clary "never received a response from the athletic department or director when these issues were raised."[18]

In January 2024, Clary "suffered an in-game concussion," which Rhoades used to "further punish" him.[19] Rhoades and the other coaches suspended Plaintiff

---

[11]  Notice of Removal, Doc.1, Compl., Ex. A ¶¶ 19, 23, 25.
[12]  *Id.* ¶¶ 28, 31.
[13]  *Id.* ¶ 34.
[14]  *Id.* ¶ 35.
[15]  *Id.* ¶ 36.
[16]  *Id.* ¶¶ 37-38.
[17]  *Id.* ¶ 39.
[18]  *Id.* ¶ 40.
[19]  *Id.* ¶¶ 41, 43.

4

from the basketball team in February 2024, and he was ultimately dismissed from the team on February 19, 2024 "on unfounded and meritless grounds."[20]

### a. The Allegedly Defamatory Statements

"Rhoades spread a false narrative that [Clary] improperly missed classes, but" these absences were apparently excused due to his concussion.[21] Many other players on the team also "had far more absences" than Plaintiff.[22] Rhoades further "spread false rumors that [Plaintiff] was failing his classes."[23] Again, this was "incorrect" as Clary "had a single, excused incomplete because he could not finish a videography assignment due to symptoms from his concussion."[24]

Rhoades also "stated that [Plaintiff] used the word 'bro' in a disrespectful fashion," despite the "entire team['s] and coaching staff['s] use[] [of] the term."[25] "Coaches were [also] overheard by players making derogatory statements about [Clary] behind his back" "at the behest of" Rhoades.[26] Further, Rhoades "slandered [Clary] to an outside coach who called Anthony Clary, [Plaintiff's] father, and informed him of the slander."[27] This individual indicated that "he felt uneasy about the stories he was hea[r]ing about" Clary.[28]

---

[20] *Id.* ¶¶ 44-45.
[21] *Id.* ¶ 47.
[22] *Id.* ¶ 48.
[23] *Id.* ¶ 49.
[24] *Id.*
[25] *Id.* ¶ 50.
[26] *Id.* ¶ 51.
[27] *Id.* ¶ 52.
[28] *Id.*

Rhoades further "spread unfounded rumors that [Plaintiff] was going to leave [Penn State] because he refused to sign the NIL agreement."[29] This "narrative was spread amongst the coaches, media and teammates, as well as individuals outside the team."[30] Ultimately, Clary contends that his "dismissal is a fabrication that was spurred by . . . Rhoades because he was upset about [Clary] speaking out and then being confronted for using his" NIL and refusing to sign the NIL agreement.[31]

"The slander by Defendants" "created an onslaught of cyber bullying, depression, ostracizing, limitation on use of facilities, damage to reputation, and financial loss."[32] Further, "[t]he slander negatively effected [Plaintiff's] ability to find a school of his liking because it created a false stigma that he was a problem student" at Penn State.[33] "This false narrative came into play at every subsequent school that [Clary] visited and became the topic of every meeting, which made multiple teams decide not to sign him."[34]

Clary's collegiate portal documentation was also improperly inputted by Penn State which resulted in coaches being unable to reach Plaintiff and having "to resort to sending . . . messages via [Clary's] personal Instagram account."[35]

---

[29] *Id.* ¶ 53.
[30] *Id.*
[31] *Id.* ¶ 54.
[32] *Id.* ¶ 56.
[33] *Id.* ¶ 57.
[34] *Id.*
[35] *Id.* ¶ 58.

**B.     Analysis**

Pennsylvania has codified the elements of a defamation claim at 42 Pa.C.S. § 8343. This statute requires plaintiffs to demonstrate: "(1) the defamatory character of the communication[;]" "(2) its publication by the defendant[;]" "(3) its application to the plaintiff[;]" (4) "the understanding by the recipient of its defamatory meaning[;]" "(5) the understanding by the recipient of it as intended to be applied to the plaintiff[;]" "(6) special harm resulting to the plaintiff from its publication[;]" and "(7) abuse of a conditionally privileged occasion."

"Under [Federal Rule of Civil Procedure] 8(a), unlike under the Pennsylvania pleading standard, the plaintiff need not identify the specific allegedly defamatory statement."[36] But to survive a Rule 12(b)(6) motion, Clary "must allege at least some specific statements identifying the speaker, the approximate date, the content, and the audience."[37] Essentially, Clary should "allege when, how, and to whom the alleged defamatory statements were made."[38]

---

[36] *Monge v. Univ. of Pennsylvania*, No. 22-2942, 2023 WL 3594471, 2023 U.S. Dist. LEXIS 89312, at *7 (E.D. Pa. May 22, 2023) (citing *Bank v. Cmty. Coll. of Phila.*, No. 22-cv-293, 2022 U.S. Dist. LEXIS 130155, 2022 WL 2905243 (E.D. Pa. July 22, 2022); *Rishell v. RR Ronnelley & Sons Co.*, No. 06-cv-4782, 2007 U.S. Dist. LEXIS 38325, 2007 WL 1545622, at *3 (E.D. Pa. May 24, 2007)).
[37] *Id.* (citing *Lee v. Univ. of Pa. Sch. of Dental Med.*, No. 19-cv-835, 2019 U.S. Dist. LEXIS 145977, 2019 WL 4060843, at *6 (E.D. Pa. Aug. 27, 2019)).
[38] *Shen-Sampas v. Klein*, No. 25-1637, 2025 WL 1257692, 2025 U.S. Dist. LEXIS 81563, at *9 (E.D. Pa. Apr. 30, 2025) (citing *Litman v. Sch. Dist. of Phila.*, No. 24-278, 2024 U.S. Dist. LEXIS 120728, 2024 WL 3361596, at *7-8 (E.D. Pa. July 10, 2024)).

With that understanding in mind, the Court's review reveals significant deficiencies in the Amended Complaint such that dismissal is warranted. Paragraphs 47, 49-53, and 63 contain the allegations relevant to the defamation claim. Paragraphs 47 and 49-53 do not identify the audience of the allegedly defamatory statements and Paragraphs 47 and 49-52 similarly lack any indication as to the approximate dates the statements were made. Paragraph 50 has a further issue as Plaintiff does not indicate that the statement is allegedly false, and Paragraphs 51-52 do not identify the content of the purportedly defamatory statements. Finally, Paragraph 63 serves as a general summary, but it is far too vague to support this claim.

## IV. CONCLUSION

Given these rather substantial deficiencies, Plaintiff's defamation claim must be dismissed. But leave to amend will be provided as Clary apparently has additional details to submit—they are referenced in the affidavit attached to his Brief in Opposition.

In accordance with the above, **IT IS HEREBY ORDERED** that:

1. Defendants The Pennsylvania State University's and Michael Rhoades' Motion to Dismiss (Doc. 7) is **GRANTED IN PART**;

      a.    Count One is **DISMISSED WITHOUT PREJUDICE**;

and

2.    Plaintiff may file an amended complaint no later than June 24, 2025.

          BY THE COURT:

          *s/ Matthew W. Brann*
          Matthew W. Brann
          Chief United States District Judge