IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KANYE CLARY, | No. 4:25-CV-00445 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| PENNSYLVANIA STATE UNIVERSITY, *et al.*, | |
| Defendants. | |

### MEMORANDUM OPINION

#### DECEMBER 2, 2025

Kanye Clary has filed a complaint alleging, as relevant here, that The Pennsylvania State University ("Penn State") and the head coach of its men's basketball team, Michael Rhoades, defamed Clary. The allegations as currently crafted are sufficient to state that two statements by Rhoades were defamatory, but many alleged statements are far too vague in several respects to support a claim of defamation. Moreover, Clary fails to allege that Penn State should be held vicariously liable for the actions of its employees.

### I. BACKGROUND

#### A. Procedural History

In December 2024, Clary's complaint was removed from state court to the United States District Court for the Eastern District of Pennsylvania, and Defendants

quickly filed a motion to dismiss and a motion to transfer the matter to this District.[1] The Eastern District of Pennsylvania granted the motion to transfer and transferred the case to this Court, but did not address the motion to dismiss.[2]

This Court thereafter granted the motion to dismiss, concluding that the allegations of defamation were legally deficient as they did not identify an audience, approximate dates of those statements, or in some instances the content of the statements or allege that the statements were actually false.[3] The Court provided Clary with leave to amend his complaint.[4]

In June 2025, Clary filed an amended complaint. He alleges in Count One that Penn State and Rhoades defamed Clary, while in Count Two he alleges that Penn State, Happy Valley United, and Blueprint Sports and Entertainment, LLC had unjustly enriched themselves from Clary's Name, Image, and Likeness ("NIL").[5]

Presently before the Court is Defendants' motion to dismiss Count One of the amended complaint.[6] This motion, having been fully briefed,[7] is ripe for disposition. For the following reasons, the Court will grant in part Defendants' motion.

---

[1]   Docs. 1, 7, 8.
[2]   Docs. 21, 22.
[3]   Doc. 29.
[4]   *Id.*
[5]   Doc. 30.
[6]   Doc. 39.
[7]   Docs. 40, 41, 43.

**B.    Facts**[8]

In 2023 and 2024, Clary was a student at Penn State and a player on, and captain of, its men's basketball team.[9] As part of his role as team captain, Clary had a "duty to speak up about issues that negatively affect the team" but, when he expressed to Rhoades concern regarding certain issues, Clary was targeted and subjected to unfair treatment by Penn State men's basketball coaches.[10]

In January 2024, Rhoades and others submitted an NIL contract to Clary, but Clary refused to sign what he believed to be a below-market-rate contract.[11] Clary alleges that, after this refusal, "the retaliation against him escalated."[12] That same month, Clary suffered an in-game concussion; as a result of symptoms from that concussion, Clary was excused from attending some classes and was unable to complete one class assignment.[13]

In January and February of 2024, Rhoades "spread [false] rumors to staff, media and surrounding people that [Clary's] father, Anthony Clary, was after more money which is the reason why [Clary] did not return" to Penn State.[14] In February 2024 Clary was suspended from the Penn State basketball team despite being a

---

[8]  Because Defendants seek only to dismiss Count One, the Court will limit its factual discussion only to facts relevant to that count.
[9]  Doc. 30 ¶¶ 20, 21, 22, 25.
[10] Id. ¶ 27; see id. ¶¶ 17, 28-31.
[11] Id. ¶¶ 33-35.
[12] Id. ¶ 36.
[13] Id. ¶¶ 38, 49, 51.
[14] Id. ¶ 41.

captain "and one of the best performing players on the team" and was dismissed from the team later that same month.[15]

In February 2024 Rhoades falsely informed Ted Miller of Boo Williams Basketball that Clary had been dismissed from the Penn State team "because he had been skipping classes and failing."[16] Rhoades also "spread a false narrative" that Clary "improperly missed classes"[17] and was failing his classes.[18] To other people Rhoades stated that Clary used the word "bro" in a disrespectful manner and, at Rhoades' behest, some Penn State men's basketball coaches made "derogatory statements" about Clary that were overheard by other basketball players.[19]

In March 2024 a Penn State basketball coach falsely told a recruiter, Ahki Collins, that Cleary was failing his classes and his father was difficult to work with.[20] Rhoades and other Penn State basketball coaches made unspecified "derogatory statements" about Clary in front of individuals including Jameer Brown, another member of the Penn State men's basketball team.[21] Moreover, Rhoades allegedly informed "various media outlets" that Clary "decided himself that he was going to

---

[15] *Id.* ¶¶ 46-47.
[16] *Id.* ¶ 45.
[17] *Id.* ¶ 49.
[18] *Id.* ¶ 51.
[19] *Id.* ¶ 53; *see id.* ¶ 52.
[20] *Id.* ¶ 54.
[21] *Id.* ¶ 55.

4

leave Penn State."[22] Rhoades additionally spread rumors to unnamed individuals that Clary was going to leave Penn State because he refused to sign an NIL agreement.[23]

These actions negatively impacted Clary's ability to transfer to a new school as "it created a false stigma that he was a problem student" at Penn State.[24] It also "created an onslaught of cyber bullying, depression, ostracizing, limitation on use of facilities, damage to reputation, and financial loss" for Clary.[25] Clary's forced transfer as a result of Defendants' actions "derailed his career."[26]

## II.    LAW

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[27] and *Ashcroft v. Iqbal*,[28] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[29] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note

---

[22]  *Id.* ¶ 56.
[23]  *Id.* ¶ 57.
[24]  *Id.* ¶ 60.
[25]  *Id.* ¶ 59.
[26]  *Id.* ¶ 63.
[27]  550 U.S. 544 (2007).
[28]  556 U.S. 662 (2009).
[29]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[30]

## III.  ANALYSIS

Defendants move to dismiss Count One, arguing that Clary has failed to state a claim for defamation.[31] Specifically, Defendants contend that Clary's allegations are insufficient to establish: (1) that any communications were defamatory in nature; (2) that the statements were published by Defendants; or (3) that those statements applied to Clary.[32] Furthermore, Defendants assert that there are no allegations of a special harm such as out-of-pocket monetary losses, or that there would be any vicarious liability for Penn State.[33]

Clary responds that he has pled specific defamatory statements and to whom those statements were directed.[34] He also asserts that the allegations adequately establish special damages resulting from the lost NIL value from attending a less prestigious university and the derailment of his basketball career.[35] Finally, Clary argues that matters of whether statements are perceived as defamatory are issues

---

[30] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[31] Doc. 40 at 15-24.
[32] *Id.* at 15-21.
[33] *Id.* at 21-24.
[34] Doc. 41 at 5-6.
[35] *Id.* at 7.

reserved for the factfinder, and he sufficiently pled that Rhoades and Penn State are vicariously liable for statements made by other members of the Penn State men's basketball coaching staff.[36]

### A. Elements of Defamation Claim

The Court turns first to the question of whether Clary has adequately alleged that defamatory statements were made. Under Pennsylvania law, to establish defamation a plaintiff must prove:

> (1) The defamatory character of the communication; (2) Its publication by the defendant; (3) Its application to the plaintiff; (4) The understanding by the recipient of its defamatory meaning; (5) The understanding by the recipient of it as intended to be applied to the plaintiff; (6) Special harm resulting to the plaintiff from its publication; and (7) Abuse of a conditionally privileged occasion.[37]

As this Court previously observed, to survive a motion to dismiss, "Clary must allege at least some specific statements identifying the speaker, the approximate date, the content, and the audience."[38]

Viewed under this standard, many, but not all, of the allegations as crafted remain too vague and lacking sufficient substance to determine that all relevant elements have been alleged.

---

[36] *Id.* at 7-8.
[37] *Meyers v. Certified Guar. Co., LLC*, 221 A.3d 662, 670 (Pa. Super. Ct. 2019) (brackets omitted).
[38] Doc. 29 at 7 (internal quotation marks omitted).

Paragraph 41 alleges that Rhoades, in January and February 2024, "spread rumors to staff, media and surrounding people that [Clary's] father, Anthony Clary, was after more money which is the reason why [Clary] did not return."[39] Defendants argue that this is insufficient to establish: (1) that the statement relates to Clary rather than his father; (2) which third parties heard the statement; or (3) how this statement damaged Clary.[40] Defendants are wrong on all three assertions.

First, although the statement only references Clary's father, it also states that Clary refused to return to Penn State due to the desire—whether his or his father's—for more money. This can reasonably be inferred as a defamatory statement about Clary—that Clary himself was greedy and only interested in money and, as a result, abandoned him team and refused to play for Penn State.

Second, the amended complaint adequately alleges the third parties that heard the statement: members of the Penn State men's basketball staff and members of the media. This is likely a small group of individuals and, while the allegation does not contain a precise recitation of the individuals who heard this statement and does not reveal their names, "it is plausible and reasonably likely that discovery will reveal that information."[41] At this stage in the proceedings, that is sufficient. Finally, it may be reasonably inferred that this statement damaged Clary; the statement created a

---

[39] Doc. 30 ¶ 41.
[40] Doc. 40 at 18.
[41] *Strader v. Home Depot*, No. CV 24-1202, 2025 WL 2734594, at *4 (W.D. Pa. Sept. 25, 2025).

stigma related to Clary that forced him to play at a less prestigious university and directly led to financial losses and the "derailment" of his basketball career.[42] Consequently, Clary has stated a claim for defamation as to the statement in Paragraph 41.

So too does Paragraph 56 adequately state a claim. It alleges that in March 2024, after Clary had been dismissed from the Penn State men's basketball team, Rhoades "spread unfounded rumors [to media outlets] that [Clary] decided himself that he was going to leave Penn State."[43] Again, while the amended complaint is not specific as to who in the media received the defamatory statement, there is good reason to believe that such information will be revealed in discovery. And while Paragraph 56 seems to imply that any financial damage to Clary resulted from his dismissal from the basketball team, it is reasonable to infer from this paragraph that Rhoades' statements caused financial harm to Clary by harming his reputation and forcing him to attend a less prestigious university.

With respect to the statement in Paragraph 45, that statement satisfies all elements save for the damages element of a defamation claim, as there is no indication that the statement damaged Clary in any way. It may be that Ted Miller is sufficiently influential in the basketball community that this allegedly defamatory statement had a direct impact on Clary's college prospects, NIL, or career outlook.

---

[42] Doc. 30 ¶¶ 59-60.
[43] Id. ¶ 56.

But there is insufficient information contained within the amended complaint to make that inference at this time.

Turning to Paragraph 49, the sum of the allegation is that Rhoades "spread a false narrative that Kanye improperly missed classes, but this was excused due to the aforementioned concussion."[44] This statement is far too vague to pass muster. It alleges neither the audience of that statement nor the general timeframe when the statement was made. Similarly, Paragraph 51, which alleges that Rhoades "spread false rumors that [Clary] was failing his classes," does not identify any recipient of that statement.[45] So too with Paragraph 52, which alleged that Rhoades stated Clary "used the word 'bro' in a disrespectful fashion," but again fails to identify the target or targets of that statement.[46]

Paragraph 53 alleges that "[c]oaches were overhead by players making derogatory statements about [Clary] behind his back, upon information and belief at the behest of" Rhoades.[47] This, however, provides insufficient information regarding what statements were actually made. Without some specifics, it is impossible to determine that the statements were defamatory or untrue.

The allegations contained in Paragraph 54 come close to stating a claim for defamation, but ultimately fall short. That paragraph alleges that "Penn State

---

[44] *Id.* ¶ 49.
[45] *Id.* ¶ 51.
[46] *Id.* ¶ 52.
[47] *Id.* ¶ 53.

10

Assistant Coach Jamal Brundt [falsely] told a recruiter, Ahki Collins, that [Clary] was failing and that his father, Anthony Clary, was difficult to deal with because they wouldn't sign the NIL agreement."[48] This contains all of the elements of a defamation claim—but Brundt is not a defendant in this action and therefore this statement cannot proceed in this case as currently drafted.[49]

Paragraph 55 suffers from the same infirmity as Paragraph 53. Although Paragraph 55 alleges that "derogatory statements" were made by Rhoades with respect to Clary, it does not provide enough details about the content of those statements, and therefore the Court cannot discern whether the statements could conceivably have been defamatory or untrue.

Finally, Paragraph 57 also fails to allege a cause of action for defamation. That paragraph alleges that Rhoades falsely informed Penn State "coaches, media and teammates" that Clary would leave Penn State "because he refused to sign the NIL agreement."[50] This states all elements of a defamation claim except for the timeframe of when this statement was made. This is especially important because it is not

---

[48] *Id.* ¶ 54.
[49] The allegations vaguely imply that perhaps Rhoades used Brundt as a cat's paw to make defamatory statements to others when it alleges that "Rhoades was the only person [Clary] or his father spoke to about the NIL concern, so . . . Brundt should not have had any knowledge" of the NIL issue. *Id.* But this is insufficient to allege that Rhoades should be held liable for Brundt's statement. After all, it is undisputed that Clary did refuse to sign the proffered NIL agreement. And the allegations do not permit the inference that Brundt's defamatory statements came from Rhoades and should be imputed to him, rather than simply being Brundt's own thoughts, opinions, or false statements.
[50] *Id.* ¶ 57.

entirely clear whether this paragraph simply rehashes the allegations contained in Paragraph 41, or is a separate defamatory statement. Absent more clarity about when these statements were made, these allegations cannot support a defamation claim.

In sum, Clary has sufficiently alleged defamation related to the statements referenced in Paragraphs 41 and 56. The remainder of his allegations are insufficiently definite and will be dismissed.

### B.   Vicarious Liability

Next, the Court considers whether the allegations may support vicarious liability for Penn State with regard to Rhoades' statements. "Under Pennsylvania law, in order to hold an employer vicariously liable for the negligent acts of its employee, these acts must be committed during the course of and within the scope of the employment."[51]

> Generally, the conduct of an employee is considered within the scope of employment for purposes of vicarious liability if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.[52]

The amended complaint as currently crafted falls short of averring those basic requirements to hold Penn State vicariously liable for the actions of Rhoades. Clary points to three averments within the amended complaint to support his theory of

---

[51] *Spencer v. Johnson*, 249 A.3d 529, 550 (Pa. Super. Ct. 2021).
[52] *Id.* (brackets omitted).

vicarious liability. First: "[a]t all times pertinent hereto, [Penn State] was acting by and through its agents, servants, and employees, all of whom were acting under the control or right of control of said defendant and within the course and scope of their employment, authority or apparent authority."[53] Second, that at all times "Rhoades was an agent, servant, or employee of" Penn State.[54] And finally that "Rhoades was acting individually and in his capacity as an agent and employee of Penn State University, Happy Valley United, and Blueprint Sports Entertainment when he intentionally and recklessly lied to others with malice aforethought in a deliberate attempt to harm [Clary] and injure his reputation."[55]

Even assuming that the statements made by Rhoades were of a kind and nature that Rhoades is employed to state or perform,[56] there are no allegations that those statements were made substantially within the authorized time and space limits of Rhoades' employment. Clary must provide details as to, for example, where the alleged defamatory statements were made (i.e. were they made on campus, during media events, etc.). Moreover, there are no allegations that Rhoades' statements were "actuated, at least in part, by a purpose to serve" Penn State.[57] Absent such

---

[53] Doc. 30 ¶ 3.
[54] *Id.* ¶ 5.
[55] *Id.* ¶ 42.
[56] This may be true of statements made to members of the media, although this is far from clear. Should Clary choose to file a second amended complaint, he must provide more clarity on the potential scope of Rhoades' employment and whether the statements he made could reasonably be considered part of those duties.
[57] *Spencer*, 249 A.3d at 550.

allegations, Penn State cannot be held vicariously liable, and all allegations of defamation as against Penn State must be dismissed.

### C. Leave to Amend

Having carefully considered the claims set forth in the amended complaint, Clary will be granted leave to file a second amended complaint. The Third Circuit has directed that, when a complaint is vulnerable to dismissal under Rule 12(b)(6), a court "must permit a curative amendment unless such an amendment would be inequitable or futile."[58] The Third Circuit has also stated that:

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.[59]

With respect to futility, the Third Circuit has sanctioned denial of leave to amend "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."[60] As detailed above, Clary may plausibly state a claim for relief as to many of the allegedly defamatory statements, and may be able to amend his complaint to adequately allege that Penn State should be held vicariously liable for the defamatory statements made by its employees. Should Clary choose to again amend his complaint, he must provide more factual

---

[58] *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).
[59] *Id.*
[60] *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

14

details that could rectify the deficiencies identified by the Court in this Memorandum. Accordingly, the Court will grant leave for Clary to again amend his complaint but, he is forewarned, it is highly unlikely that the Court will grant further leave to amend should the allegations again be deemed insufficient to state a claim.

## IV. CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss the amended complaint is granted in part, but with leave for Clary to again amend his complaint.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge